## Detroit Steel & Spring Company v. Royal J. Whitney and the Western Steel & Spring Company.

1. INSTRUCTIONS — *Abstract Propositions of Law.* — An instruction containing an abstract proposition, not misleading, is not erroneous; but it is otherwise when its tendency is to impress the jury with the idea that the court is opposed to either of the parties litigant.

2. SAME—*Inquiry as to Character of Sales.*—An instruction which effectually excludes from the jury the inquiry as to whether a sale was anything but a mere pretense, in a case where such inquiry is pertinent, is erroneous.

3. SALES OF GOODS — *Subject to Legal Process Without Delivery.*— Goods may be bargained and sold, so that the title passes to the purchaser, and the goods made subject to legal process against him, although nothing was said, or even tacitly understood, about a time, place or terms of delivery. If the price is paid, or a credit agreed upon, the title passes.

4. SAME — *What Constitutes, a Question of Law.* — An instruction which implies that a delivery of goods sold is necessary to render it subject to legal process against the purchaser, or leaves to the jury the question of law of what is necessary to complete a sale, is erroneous.

**Memorandum.**—Attachment proceedings and interpleader. Appeal from the Superior Court of Cook County; the Hon. HENRY W. FREEMAN, Judge, presiding. Heard in this court at the October term, 1894. Reversed and remanded. Opinion filed December 20, 1894.

APPELLANT'S BRIEF, MARSTON, AUGUR & TUTTLE, ATTORNEYS.

When a person sells personal property and delivers possession, or knowingly allows the purchaser to use the same as his own and hold himself out to the world as owner, even though the purchaser fails to pay for the same, the title will pass in favor of an innocent purchaser from the vendee, or in favor of a creditor of his vendee, who, without notice of the facts, acquires a lien thereon. Morris v. Grover, 2 Scam. 528; Jennings v. Gage, 13 Ill. 610; Murch v. Wright, 46 Ill. 487; McCormick v. Hadden, 37 Ill. 370; Brundage v. Camp, 21 Ill. 239; Bell v. Farrar, 41 Ill. 400; Butters v. Houghwout, 42 Ill. 18; Kranert v. Simon, 65 Ill. 344; Schwabacker v. Rush, 81 Ill. 310; Van Duzer v. Allen, 90 Ill. 499; Chickering v. Bastress, 130 Ill. 206.

Detroit Steel & Spring Co. v. Whitney.

A creditor of the vendee acquiring a lien upon the property sold is not required to show a formal delivery by the vendor. When the vendor, after the terms of sale have been agreed upon, gives the vendee a written order for the property on the party holding it, upon which the actual vendee receives the same, this will be actual delivery by the vendor. Van Duzer v. Allen, 90 Ill. 499.

In a trial of a case before a jury it is error to give instructions consisting of mere abstract propositions of law, as they are apt to mislead a jury. C., R. I. & P. R. R. Co. v. Lonergan, 118 Ill. 45; C. & A. R. R. Co. v. Utley, 38 Ill. 410.

Seth F. Crews, attorney for appellees.

Mr. Justice Gary delivered the opinion of the Court.

July 3, 1893, the appellant commenced a suit by attachment against Henry O'Hara, a non-resident of this State, upon an apparently indisputable debt, and the writ was levied upon the property which is the subject of dispute here. The history of the property seems to be that there had been a corporation called the Atkinson Steel & Spring Works, having a plant which, under judicial process, was sold to Whitney. Then a form of organizing another corporation called the Western Steel and Spring Company, with $300,000 capital stock, all but two shares held by a clerk in the office of the attorney of the appellees, and none of it ever paid for, was gone through, and in the name of that corporation the plant was operated, and manufactured largely, apparently wholly under the control of O'Hara, he furnishing the bulk of the money to run it, and Whitney some.

That corporation was organized for the purpose of buying the property from Whitney, but never did it. In December, 1892, the plant burned down, and Whitney got the insurance.

Now, Whitney, by an interpleader, claimed all the property attached except, it would seem, such as was claimed by

the Western Steel and Spring Company, as added by that company. Nominally, O'Hara never owned any of the property, unless by virtue of the matter now to be stated.

As a witness, O'Hara testified in effect that the additions, whatever they were, made to the property in the name of the Western Steel and Spring Works were his, because he furnished the money to operate the plant; and in settling the insurance, Whitney seems to have so treated such addi tions, and on the trial disclaimed as to them. I have said the form of organizing the corporation was gone through, but that statement is stronger than the record will bear out.

One Furgeson testified that he was the superintendent of the company, and Whitney testified that O'Hara was presi- dent and the active man in managing the concern; that he was himself the so-called treasurer and vice-president, but never performed any duties, except that he drew one draft, and that the corporation never held any meetings after the first one. There was, in fact, no body to the corporation; it was a mere varnish upon what was regarded by all as O'Hara's business. The corporation owes nobody but O'Hara and Whitney, even nominally.

Now as to the property claimed by Whitney. That it once was his is undoubtedly true; but orally and by letters put in evidence he often, during June and July, 1893, repre- sented that in May he had sold the whole property to O'Hara. Upon that subject the testimony of Whitney and O'Hara is that in May they did agree upon terms for a sale but that O'Hara was unable to pay for the property, and the sale was never consummated.

Very numerous instructions were given; too many to quote. Among those given at the request of the appellees were these :

" 1. The jury are instructed that to constitute a contract of sale of personal property the minds of the two parties must meet and agree on the articles to be sold, the price to be paid, the terms of payment, and the time, place and terms of the delivery of the property sold, so that each mind as-

sents to all of the requirements of the other.    If any one of these matters is left open for further consideration and further settlement, there is no complete contract of sale.

2.    The jury are instructed that when one party fails or refuses to perform his part of the contract, with an intention to abandon it, or disables himself from performing it, the other party may treat the contract as rescinded.

3.    The jury are instructed that all contracts may be rescinded by the consent of all the contracting parties, subject to the rights of other .persons, if any, who have acquired rights as innocent purchasers or creditors thereunder, and this conseat need not always be expressed in words.    If either party, without right, claims to rescind the contract, the other party need not object, and if he permit it to be rescinded, it will be done by mutual consent.

4.    The jury are instructed that there is no method known to the law for conveying real estate, so as to convey the legal title from one person to another, except by deed, in writing and under seal, executed and delivered by the person holding the legal title or else executed and delivered by some one authorized, in writing, and under seal by the person holding the legal title, to make such deed for and in the name of the owner.

5.    The court instructs the jury, for the claimant Whitney, that if you believe from the evidence that both Whitney and O'Hara told the agent of the plaintiff and other persons that Whitney had sold the property in question to O'Hara, yet if you believe from the evidence that although the parties intended to make and complete such sale they had never done so, and said property had never been delivered, and if you further believe from the evidence for any reason whatever such sale was never consummated and completed, nor the property delivered, then the right of property had not passed from Whitney, and he would be entitled to maintain in this action his right of claim for such property to whatever extent the evidence may show that he is entitled to the same.

6.    The court further instructs the jury that the issue, or

whatever of indebtedness or amount of indebtcdness, or the amount of costs, or who caused the costs to accrue, is not for your consideration, and should have no weight whatever in influencing your verdict. The only question for you to pass upon in this case, is : Was the property levied upon at the time of such levy, the property of the claimant Whitney, and was any portion of the property the property of the claimant the Western Steel and Spring Company ? The court further instructs you that the question of the ownership of stock, or the amount of which was held by the Western Steel and Spring Company, cuts no figure and throws no light whatever on the question of the ownership of the property in question, and such evidence should not bias your judgment or influence you in any way in arriving at a verdict in this case.

7. The court instructs the jury that if you believe from the evidence that the Western Steel and Spring Company was a corporation, and that the same conducted and carried on a manufacturing business as such corporation; and if you further believe from the evidence that certain articles of property levied on by attachment in this case belonged to, or were the property of, the Western Steel and Spring Company at the time of such levy, then in that case you should find the right of property as to such articles to be in the Western Steel and Spring Company; and you are further instructed that the fact that the defendant in attachment, Henry O'Hara, may be, or was a legal shareholder in said Western Steel and Spring Company, yet that fact will make no difference and should not influence your verdict unless you believe that the said Western Steel and Spring Company had, prior to the date of such attachment, sold or conveyed said articles of property to the defendant, Henry O'Hara.

8. The court instructs you that although you may believe from the evidence that the defendant in attachment, Henry O'Hara, was a stockholder in the Western Steel and Spring Company, yet that fact standing alone does not of itself show ownership of the property in Henry O'Hara,

and does not of itself prove that the property in question, claimed by the Western Steel and Spring Company, is not the property of the Western Steel and Spring Company; in other words, a corporation as such holding property, holds the legal title to the property belonging to such corporation, and no part of such title rests or is vested in any one stockholder of such corporation; therefore, if you believe that the Western Steel and Spring Company were the owners of the property claimed by them at the time of the levy in said attachment, you should find the possession of such property in the claimant, the Western Steel and Spring Company."

Now, as to the first four of those instructions, while it is true that abstract instructions, not misleading, are not error, yet these can not be excused on that plea. Their tendency is to impress the jury with an idea that the court was utterly opposed to the plaintiff. The return upon the writ of attachment showed only a levy upon the right, title and interest of O'Hara in a great quantity of what, as described in that return, are *prima facie* goods and chattels, personal, not real, property.

The interpleader by Whitney, claims "the lands, tenements, goods and chattels, attached." The words, "lands and tenements," are merely surplusage, for under the return there could be no attachment of, because no levy upon, lands and tenements.

The interpleader by the Western Steel and Spring Company, claims "the goods and chattels attached" "except that part which was levied upon and belongs to, and is the property of" Whitney, without other description.

The first instruction is not true in point of law. Goods may be bargained and sold, so that the title passes to the purchaser, and the goods made subject to process against him, though nothing was said, or even tacitly understood, about time, place or terms of delivery. If the price were paid, or credit agreed upon, the title would pass. Benjamin on Sales, 633. And if Whitney had so sold the property to O'Hara, the second and third instructions were well calculated to lead the jury astray.

The levy was made July 3d.   On that day, and again July 17th, Whitney wrote that he had sold the property to O'Hara in May.   If that was true, and the sale complete, any rescission would be ineffectual against the plaintiff.   The fourth instruction, as this record stands, could have no other effect than to befog the jury with the notion that there was some abstruse doctrine of the law of real property, much in favor of the appellees.

The fifth instruction implies that delivery of the property to O'Hara was necessary to render it subject to process against him; and if the jury did not so understand it, leaves to them the question of law of what is necessary to complete a sale.   That was error.   Charles v. Lasher, 20 Ill. App. 36.

The sixth, seventh and eighth instructions in a general way treat the Western Steel and Spring Works as a substantial entity, standing between O'Hara and his creditors, and the last sentence of the sixth instruction effectually cuts off the inquiry whether it was anything but a mere pretense, as both Whitney and O'Hara seem to have considered it when they had no interest to treat it as substantial.

Upon the evidence, the plaintiff was entitled to instructions that would be applicable to it, and not divert the jury from the issues they were to pass upon.

The judgment is reversed and the cause remanded.